IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STEVEN RAY MOSIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-06112-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Steven Ray Mosier seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.* The administrative law judge ("ALJ") found that Plaintiff had multiple severe impairments, including degenerative disk disorder and depression with bipolar mood disorder, but retained the residual functional capacity ("RFC") to perform the full range of medium work with certain restrictions related to his mental impairments. Relying on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff could perform past relevant work as a housekeeper.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed his application for disability insurance benefits on August 17, 2009, alleging a disability onset date of August 15, 2009. The Commissioner denied Plaintiff's

application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing on August 24, 2011, at which the Plaintiff testified, and a supplemental hearing on January 30, 2012. On February 23, 2012, the ALJ issued a decision holding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on June 25, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available "zone of choice," and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the

Commissioner follows a five-step sequential evaluation process.[1]  Plaintiff contends the Commissioner erred at step four because: (1) in weighing the medical evidence, the ALJ failed to give sufficient weight to his treating doctors' opinions; and (2) the ALJ failed to properly evaluate his credibility.  The Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole.

### A.     Substantial evidence supports the ALJ's decision to give little weight to the opinion of Plaintiff's treating physicians and the examining psychologist.

Plaintiff contends the ALJ erred by giving little weight to the opinion of his treating psychiatrist, Dr. Jose Menendez, M.D., his treating therapist, Ms. Leslie Johnson, and the agency's examining psychologist, Mr. Louis Bein, M.S.

Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them.  *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).  The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record.  20 C.F.R § 404.1527(c)(2). An ALJ cannot, however, give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques, or if the opinion is inconsistent with the other substantial record evidence.  *Id.*; *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir.

---

[1] The five-step process is as follows:  First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity.  If so, he is not disabled; if not, the inquiry continues.  At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments.  If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled.  At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520.  If so, the applicant is considered disabled; if not, the inquiry continues.  At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work.  If so, the applicant is not disabled; if not, the inquiry continues.  At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work.  20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled.  After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform.  *King*, 564 F.3d at 979 n.2.

2010).  "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011).

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

The Court cannot hold the ALJ erred in discounting the opinions of Dr. Menendez, Ms. Johnson, or Mr. Bien because he gave three valid reasons for doing so. First, the ALJ accurately described the forms submitted by them as checklists containing little objective, clinical support for their opinions. R. at 16, 422-26, 480-87, 564-67, 569-77, 680-87. Thus, he did not err. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (affirming the ALJ's rejection of an opinion because it was conclusory and in a checklist format).

Second, Dr. Mendendez and Ms. Johnson's opinions are inconsistent with their own treatment notes. *Strongson v. Barnhart*, 361 F.3d 1066, 1070-71 (8th Cir. 2004) (permitting the ALJ to discount a physician's opinion that was "without explanation or support from clinical findings" and "not internally consistent with [the doctor's] own treatment notations."). For example, Dr. Menendez's treatment notes described Plaintiff's symptoms generally as mild to medium, and he also noted that medication generally controlled these symptoms, or at least ameliorated them, so that they were not disabling. R. at 12-16, 365-77, 419-20, 475-78, 489-98, 668, 670. Similarly, Ms. Johnson noted that medication helped Plaintiff's symptoms, he was handling the grieving process for the loss of his father-in-law well, and that he discontinued the

4

counseling after a few months because his symptoms improved and he had reached his therapy goals. R. at 491-96, 667-69.

One of Plaintiff's argument's on this point, however, is well-taken. The Court is not persuaded by the Commissioner's suggestion that Dr. Menendez and Ms. Johnson's assessment of Plaintiff's Global Assessment of Functioning ("GAF")[2] score to be in the 60s and upper 50s is inconsistent with their opinions, or that the Court should disregard Mr. Bien's opinion because he estimated Plaintiff's GAF score to be much lower, 45, suggesting he could not work. R. at 16. On the contrary, the range of GAF scores here illustrates why the Commissioner has cautioned that GAF scores do not correlate to the severity requirements in the disability framework. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764 (2000). This Court often sees different mental health providers assign the same patient different GAF scores. In fact, the fifth edition of the Diagnostic and Statistical Manual of Medical Disorders ("DSM-5") has dropped the GAF scale as a diagnostic tool because it suffers from a conceptual lack of clarity and "questionable psychometrics in routine practice." *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed., Am. Psychiatric Ass'n 2013). Consequently, the different GAF scores assigned to Plaintiff do not indicate anything about the soundness of Dr. Menendez, Ms. Johnson, or Mr. Bien's opinions.

Third, the ALJ did not err in discounting Dr. Menendez's and Ms. Johnson's opinions because their treatment notes revealed that Plaintiff's mental symptoms decreased or stabilized with medication. R. at 12-16, 665-66; *see, e.g.*, *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of

---

[2] GAF scores are a clinician's personal assessment of an individual's social, occupational, and psychological functioning. *Mortensen v. Astrue*, No. 10-4975 (JRT/JJG), 2011 WL 7478305, at *2 n.4 (D. Minn. Sept. 30, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders* 32-33 (4th ed., Am. Psychiatric Ass'n 1994)).

disability."). A mental illness is not disabling *per se*; rather, a plaintiff must show a severe functional loss establishing an inability to engage in substantial gainful activity. *See, e.g.*, *Buckner*, 646 F.3d at 557 (diagnoses of mental impairments failed to establish a disabling mental impairment). The fact that Plaintiff was taking psychotropic medications before his father-in-law passed and then took them at a higher dose while receiving therapy to help him deal with the loss, does not establish that he is unable to work. *See, e.g.*, *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("The medical records support the conclusion that any depression experienced by [the claimant] was situational in nature, related to marital issues, and improved with a regimen of medication and counseling."). As the ALJ observed, nothing else in the record indicates Plaintiff experienced episodes of decompensation or other symptoms indicating he is disabled under the Act. R. at 14 (noting Plaintiff had no emergency room visits or hospitalizations caused by mental illness). Accordingly, given the record, the Court cannot say the ALJ erred.

**B.     The ALJ did not err in evaluating Plaintiff's credibility.**

Plaintiff also contends the ALJ failed to properly evaluate his credibility. The ALJ found Plaintiff's allegation of total disability not fully credible because: (1) medication improved his impairments; (2) the record did not substantiate his claim that he was frequently absent from work; (3) he appeared to be "very stable" during the hearing; (4) the alleged severity of his mental impairments were inconsistent with the objective medical evidence; and (5) his activities of daily living were inconsistent with total disability. R. at 15-16.

When the ALJ discounts a claimant's credibility, he must explain why he did so. *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the claimant and third parties; the claimant's daily activities; the duration, frequency and intensity of

Case 5:13-cv-06112-DGK   Document 16   Filed 09/23/14   Page 6 of 7

pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

Here, Plaintiff disputes each of the listed reasons or argues that each reason by itself is not a valid basis to discredit Plaintiff's testimony. Pl.'s Br. at 17-18. After carefully reviewing the record, the Court holds that each of the listed reasons is supported by substantial evidence in the record, and that when considered in combination, these reasons support the ALJ's credibility determination. Consequently, the ALJ did not err in evaluating Plaintiff's credibility.

## Conclusion

For the reasons discussed above, the Court finds the Commissioner's determination is supported by substantial evidence on the record. The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     September 23, 2014                /s/ Greg Kays
                                                        GREG KAYS, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT